## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. CR-23-332-R |
| | ) |
| TIMOTHY STEVEN BLAYLOCK, JR., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S SENTENCING MEMORANDUM
## AND MOTION FOR VARIANCE
_____

Defendant, Timothy Steven Blaylock, Jr, through his counsel, Mark Henricksen, submits his Sentencing Memorandum pursuant to LCrR 32.2, and Motion For Variance, addressing the statutory factors set forth in Title 18, United States Code, §3553(a), as they relate to a fair and just sentence in this case.

## I.  THE CHARGES

<u>Prior Complaints and Indictments filed in the United States District Court For the Western District of Oklahoma:</u>

On July 28, 2023, a Criminal Complaint was filed in the United States District Court the Western District of Oklahoma, charging Mr. Blaylock with distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).

On August 16, 2023, a two-count Indictment was filed in the Western District charging him with distribution of child pornography, in violation of 18 U.S.C. §

1

2252A(a)(2), the penalty for which is found at 18 U.S.C. § 2252A(b)(1); and attempted

coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b).

On September 19, 2023, a five-count Superseding Indictment was filed in the

Western District charging Mr. Blaylock with distribution of child pornography, in

violation of 18 U.S.C. § 2252A(a)(2), the penalty for which is found at 18 U.S.C.

§2252A(b)(1); attempted coercion and enticement of a minor in violation of 18 U.S.C. §

2422(b); two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a),

the penalty for which is found at 18 U.S.C. § 2251(e); and possession of child

pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

Current Superseding Information:

On November 11, 2023, a two-count Superseding Information was filed in the

United States District Court for the Western District of Oklahoma.

Count 1 charges that between on or about March 7, 2021, and on or about July 28,

2023, the defendant in the Western District used, persuaded, induced, enticed, and

coerced minors Jane Doe #1 and Jane Doe #2 to engage in sexually explicit conduct for

the purpose of producing visual depictions of such conduct, and such visual depictions

were produced using materials that had been transported in interstate and foreign

commerce, in that he produced them using his foreign-made Samsung cell phone.  All in

violation of 18 U.S.C. § 2251(a), the penalty for which is found at 18 U.S.C. § 2251(e).

Count 2 charges that on or about July 28, 2023, in the Western District, Mr.

Blaylock knowingly possessed a Samsung cell phone that contained images of child pornography that had been transported using a means or facility of interstate or foreign commerce, in that he had downloaded them via the Internet onto his cell phone.   All in violation of 8 U.S.C. § 2252A(5)(B), the penalty for which is found at 18 U.S.C. § 2252A(b)(2).

On November 27, 2023, Mr. Blaylock appeared before the Honorable David Russell and entered a guilty plea to Counts 1 and 2 of the Superseding Indictment, and Mr. Blaylock was continued in custody.

## II. THE WRITTEN PLEA AGREEMENT

Pursuant to the written plea agreement, the government will recommend a three-level reduction for acceptance of responsibility, if applicable.  USSG §3E1.1.  Mr. Blaylock agrees to financial disclosures to the United States as fully detailed in the plea agreement.

Both parties agree to waive the right to appeal or collateral challenge the sentence imposed by the Court, except under limited circumstances

If Mr. Blaylock enters a guilty plea and fully meets all obligations under the plea agreement, the government will move to dismiss at sentencing the Indictment and Superseding Indictment and will not further prosecute Mr. Blaylock for violations of 18 U.S.C. §§ 2422(b), 2252(a), and 2252A between March 17, 2021, and July 28, 2023.

Pending State Charges:

On August 16, 2023, a felony warrant was issued in Beckham County District

Court, Sayre, Oklahoma charging Mr. Blaylock with the following:

    Counts 1-2:  Child Sexual Abuse
    Count 3: Attempted Rape, First Degree
    Counts 4-5: Pornography - Procure/Produce/Distribute/Possess Juvenile
            Pornography
    Count 6: Violation of Oklahoma Statute via Computer

Case No. CF-2023-197.

## III.  PRESENTENCE INVESTIGATION REPORT

The Presentence Investigation Report was submitted March 15, 2024.  The

Government made Objections on March 20, 2024.

A Revised Presentence Investigation Report was submitted April 8, 2024.

**Sentencing Date**:  Not yet determined.

## IV.  SENTENCING PROVISIONS

Statutory Provisions:

Count 1:  The minimum term of imprisonment is 15 years and the maximum term

is 30 years. 18 U.S.C. § 2251(a) and 18 U.S.C. § 2251(e).

Count 2: The maximum term of imprisonment is 10 years.  18 U.S.C. §

2252A(a)(5)(B) and 18 U.S.C. § 2252A(b)(2).

Guideline Provisions:

Based on a Total Offense Level of 43 and a Criminal History Category of I, the

guideline imprisonment range is life.   However, the statutorily authorized maximum

sentences are less than the minimum of the applicable guideline range.  Therefore, the guideline term of imprisonment is 480 months.  USSG § 5G1.2(b). Further, pursuant to USSG § 5G1.2(d), if the sentence imposed on the count carrying the highest statutory maximum (Count 1 -  360 months) is less than the total punishment (480 months), then the sentence imposed on one or more of the other counts (Count 2 - 120 months) shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

**Supervised Release**:

Statutory Provisions:

Counts 1 and 2:   The Court shall impose a term of supervised release of 5 years to life.  18 U.S.C. § 3583(k).

Guideline Provisions:

The statute requires a term of supervised release of five years.  Therefore, the guideline requirement for a term of supervised release is 5 years to life.   USSG § 5D1.2(b)(2).   Pursuant to §4B1.5, Application Note 5A, the statutory maximum term of supervised release is recommended if the defendant is sentenced as a repeat and dangerous sex offender against minors.

**Probation**:

Statutory Provisions:

Count 2:   Probation is expressly precluded by statute.  18 U.S.C. § 3561(a)(2).

Count 2: Mr. Blaylock is ineligible for probation because he will be sentenced at the same time to a term of imprisonment for the same or a different offense.  18 U.S.C. § 3561(a)(3).

Guideline Provisions:

Count 1: Probation is expressly precluded by statute.  USSG § 5B1.1(b)(2).

Count 2: Mr. Blaylock is ineligible for probation because he will be sentenced at the same time to a term of imprisonment for the same or a different offense USSG § 5B1.1(b)(3).

## V.  REQUEST FOR VARIANCE

After determining a defendant's Guidelines range, a court then considers any departures or variances.  *See* U.S.S.G. § 1B1.1(a)-(c) and § 1B1.1, cmt. (background).  A variance is imposed "outside the guidelines framework" based under the applicable 18 U.S.C. § 3553(a) factors taken as a whole.   District courts imposing sentences are charged to "engage in a holistic inquiry of the § 3553(a) factors," *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014), and to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Gall v. United States*, 552 U.S. 38, 52 (2007).  "Although the Guidelines, as the "starting point and the initial benchmark,' continue to play a role in the sentencing determination, see *Gall*, 552 U.S., at

6

49, 128 S.Ct. 586, there is no longer a limit comparable to the one in *Burns*[1] on variances from

Guidelines ranges that a district court may find justified." *Irizarry v. United States,* 553 U.S. 708,

714-715 (2008). The Supreme Court's decisions on the scope of information a district court

may consider in determining the appropriate sentence make clear that the scope is quite

broad. There is a "longstanding principle that sentencing courts have broad discretion to

consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151, (per

curiam). In *Pepper v. United States*, 562 U.S. 476, 491 (2011) the Court stressed the

broad scope of the evidence on which a sentencing court may rely, stating that a

categorical bar on any evidence contradicts Congressional intent.

Acknowledging the seriousness of the offense which he has admitted to

committing, and expressing remorse for his criminal actions, for reasons set out below Mr.

Blaylock respectfully requests this Honorable Court for a variance through application of

the sentencing factors in 18 U.S.C. § 3553. See *United States v. Atencio*, 476 F.3d 1099,

1101 n.1 (10th Cir. 2007) (overruled on other grounds, *U.S. Kaufman*, 546 F.3d 1242,

1270 (10th Cir. 2008)).

The punishment in this case is so severe that a variance would still result in a very

significant term of incarceration for Mr. Blaylock, and result in a sentence

that is "sufficient, but not greater than necessary" to comply with the purposes of

paragraph 2 of Title 18, United States Code, §3553(a)(2). Additionally, the statutory

---

[1] *Burns v. United States* 501 U.S. 129 (1991).

maximum term of supervised release, with all the attendant conditions, is recommended in this case and will provide safety to the community and prevent Mr. Blaylock from further offenses.

Nature and Circumstances of the Offense

Mr. Blaylock understands the seriousness of the offenses and has indicated his remorse for committing these offenses. Prior to, and even during the period of time that Mr. Blaylock was involved in these very serious crimes, he had never committed other crimes during his lifetime. The nature of his crimes has left him void of friends and family connections, and has resulted in a unique severe punishment of its own. Mr. Blaylock will receive substantial incarceration, but Courts have acknowledged that incarceration is not the only form of punishment. The Supreme Court has stated that although custodial sentences are qualitatively more severe than probationary sentences "[o]ffenders are nonetheless subject to several standard conditions that substantially restrict their liberty. *Gall v. United States,* at 595, citing *United States v. Knights,* 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'") *Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150 (10th Cir 2021) involved a case wherein a First-Lieutenant received confinement for nineteen years which was affirmed on appeal *Id*. 1151 at 1152. Three days after he filed for habeas relief he was granted a full and unconditional pardon by the President. *Id*. Although the issue there was whether the

8

pardon in effect rendered his habeas proceeding moot as argued by the Government, that

case supports Mr. Blaylock's argument that there are collateral consequences to his

conviction even if he is not imprisoned at the high end of the guidelines.   The defendant in

*Lorance* argued that he continued to suffer collateral consequences as a result of his

convictions and wished to proceed with his habeas proceeding to show his innocence.  *Id.*

In reviewing whether the pardon rendered the defendant's habeas proceeding moot, the

Tenth Circuit conducted a thorough inquiry and ultimately found that the language of the

pardon "did not condition acceptance of the pardon on an admission of guilt."   *Id.* at 960.

If the defendant's conviction was found to be unconstitutional during habeas proceedings,

then there would be no conviction and, therefore, no collateral consequences.   The Court

explained "that would provide [defendant] with at least part of the relief he seeks because

vacating the conviction would alleviate some of their collateral consequences.

Specifically, *it would impact [defendant's] criminal history, ability to obtain military*

*benefits, and likelihood of passing a bar character and fitness investigation.*"  Id. at 165

(Emphasis added)

    Mr. Blaylock submits that he will have significant collateral consequences as a

result of his conviction and that even if he is granted a variance he will continue to have

punishment in the form of the collateral consequences he will face lifelong.  Mr. Blaylock

will not receive probation, but when he is released he will not enjoy absolute liberty either.

 He will be stigmatized as a child sex offender.   He will have substantial conditions on

supervised release.  He will be bound to register as a sex offender and abide by the substantial restrictions placed on sex offenders.  He will be received with disapproval and will continue to be punished outside the prison walls once released.  This form of punishment, i.e. collateral consequences, should be considered when arriving at a sentence for Mr. Blaylock as the guidelines place no limitation on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purposes of imposing an appropriate sentence.  18 U.S.C. §3661.

A sentence which is less than the advisory guideline range will meet the interests of justice in this case.   Although the seriousness of these offenses is significant, a sentence below the advisory guideline range is appropriate, as it would still provide for a sentence that could protect the public, promote respect for the law, afford adequate deterrence to criminal conduct, reflect the seriousness of the offense, and further afford substantial protections by way of the lengthy period of stringent supervised release.

History and Characteristics of the Defendant.

Mr. Blaylock's history and characteristics cannot be said to be "normal" in the sense that successful persons experience positive developmental events which form the foundation for success.  He did, however, avoid criminal activity during his lifetime, other than the serious crimes in this case.

Mr. Blaylock was born in 1986 to Timothy Blaylock and JoAnn Blaylock who

divorced when Mr. Blaylock was approximately four years old. He was loved by his mother, but not by his father who suffered from PTSD and depression from his service in the military. He did maintain a good relationship with his father prior to his father's death in 2019. He maintained a good relationship with his mother until he was arrested for the crimes in this case. That relationship is broken. Mr. Blaylock was the recipient of constant bullying in school, starting in kindergarten. He also was beaten up two or three times a week. At the age of 5 he was sexually molested by his female cousin who was 12 or 13 years old.

Mr. Blaylock worked as a security guard at North Fork Correctional Center when a prison riot occurred with the Mexican Mafia, and was assaulted. As a result he battles with depression and PTSD. He had been prescribed Prozac which caused to have suicidal thoughts. In 2013, he sought counseling at Red Rock in Clinton, Oklahoma and was at the facility for seven days. He believes he may have brain damage as a result of living at Camp Lejeune when water there was contaminated. He has a medical marijuana card and uses marijuana nightly. He also drinks alcohol approximately every other weekend on a social basis.

Mr Blaylock attended one semester of college. He has his hazmat certification and his firefighter certification. He is CPR/first aid certified, and has an insurance license. His attempts to enter the military were unsuccessful due to a poultry allergy. He has held

11

numerous jobs and from 2010 until 2018 he worked as a correctional officer for the

Oklahoma Department of Corrections and CoreCivic.

Recommended Conditions of Supervision.

The recommended conditions of supervised release in this case are numerous and

severe due to the nature of the offenses, but offers substantial assistance in ensuring Mr.

Blaylock will not re-offend and ensures the safety of the public.

He must actively participate in a program of substance abuse aftercare
until he is successively discharged from the program.  He must avoid alcohol
and other intoxicants; not frequent bars, clubs, or other establishments where
alcohol is served.   He must contribute to the cost of those services according
to his ability to pay.

He must participate in a program of mental health aftercare, and
contribute to the cost according to his ability to pay.

He shall submit to a sex offender mental health assessment and a
program of sex offender mental health treatment, as directed by the U.S.
Probation Officer, until released from the program by the probation officer.
He may be required to pay for the services according to his ability to pay.

He shall waive all rights to confidentiality regarding sex offender
mental health treatment in order to allow release of information to the
supervising probation officer, and authorize open communication between
the probation officer and the treatment provider.

He shall not be at any residence where children under the age of 18
are residing without the prior written permission of the U.S. Probation
Officer.

He shall not be associated with children under the age of 18 except in

the presence of a responsible adult who is aware of the defendant's background and current offense, and who has been approved by the U.S. Probation Officer.

He shall not view, purchase, possess, or distribute any form of pornography depicting sexually explicit conduct as defined in 18 U.S.C. § 225(2), to include audio or written materials describing such conduct, unless approved for treatment purposes, or frequent any place where such material is the primary product for sale or entertainment is available.

He shall register pursuant to the provisions of the Sex Offender Registration and Notification Act, and submit his person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devises or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

He shall not use a computer to access any on-line computer service at any location, including employment, for the purpose of viewing, obtaining, or transmitting child pornography or other sexually explicit material; and shall not access Internet chat rooms for the purpose of obtaining child pornography or enticing children under the age of 18 to engage in sexually explicit activity.

He shall consent to the U.S. Probation Officer conducting periodic unannounced examinations, without individual showing of reasonable suspicion, on any computer equipment used by him.

He shall not possess or use a computer with access to any on-line computer service at any location, including place of employment, without the prior written approval of the probation officer.

He shall have no contact, direct or indirectly, with any and all victims of the offense.

See Presentence Investigation Report, Doc. 40, ¶¶107-118.   Mr. Blaylock submits that these stringent conditions of supervised release protect the public and prevent further unlawful activity on the part of Mr. Blaylock, and support a substantial variance of the guideline range of punishment in his case.  He respectfully requests a sentence below the guideline range.

**Title 18, United States Code, § 3661.**

A variance can be imposed without compliance with the rigorous requirements for departures. *United States v. Gantt*, 679 F.3d 1240, 1247 (10th Cir. 2012)

The factors discussed above warrant a variance below the guideline range. Under the provisions of Title 18, United States Code, §3661, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purposes of imposing an appropriate sentence."   In *Gall v. United States*, 128 S.Ct. 586 (2007) the Court stated that "the Guidelines should be the starting point and the initial benchmark", but that the Guidelines "are not the only consideration, however."  *Id.* at 596.   The Court explained the process involved in determining the sentence:

> Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence

14

requested by the party.

*Id.*    Further, in imposing a sentence the Court rejected "an appellate rule that requires

'extraordinary' circumstances to justify a sentence outside the Guideline range. *Id.* at 595.

The overriding principle of Title 18, United States Code, §3553(a) requires the

district courts to impose a sentence "

which are:

    (1) the nature and circumstances of the offense and the history and
characteristics of the defendant;

    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the
law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most
effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range;

    (5) any pertinent policy statement;

    (6) the need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

Application of Title 18 U.S.C. 3553(a) demonstrates that a sentence requested by

Mr. Blaylock is warranted.

**Fines**.

<u>Statutory Provisions:</u>

Pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, the following shall be assessed in addition to any other criminal penalty, restitution, or special assessment authorized by law, not to exceed $250,000 per count:

Count 1: Not more than $50,000 on any person convicted of a child pornography production offense.

Count 2: No more than $17,000 on any person convicted of an offense under 18 U.S.C. § 2252A(a)(5).

<u>Guideline Provisions:</u>

The fine range for this offense is $50,000 to $250,000.  USSG § 5E1.2(c)(3).    "In general, the maximum fine permitted by law as to each count of conviction is $250,000 for a felony or for any misdemeanor resulting in death."  Application Note No. 2. However, pursuant to §5E1.2(e), provides that "[i]f the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, . . . the court may impose a lesser fine or waive the fine. In these circumstances, the court shall consider alternative sanctions in lieu of all or a portion of the fine, and must still impose a

total combined sanction that is punitive[2]. Although any additional sanction not proscribed by the guidelines is permissible, community service is the generally preferable alternative in such instances. *Id.*

Mr. Blaylock cannot pay the fine even through a reasonable installment payment because (1) he will be incarcerated for a lengthy time with no source of income; and (2) he will owe restitution as discussed below, and the restitution must be paid before"[a]ll other fines, penalties, costs, and other payments required under the sentence" according to § 2259A(d)(2)(E)). Mr. Blaylock submits that the fine be waived. Imposition of community service after Mr. Blaylock's release would satisfy the "combined sanction that is punitive" if the fine is waived.

**Restitution.**

Statutory Provisions:

Count 1: Pursuant to 18 U.S.C. §§ 2259A(a) (3) and 2259(b)(2) the Court shall assess restitution. The Court shall determine the full amount of the victims' losses and order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victims' losses, but which is no less than $3,000. There is no

---

[2]  3. "The determination of the fine guideline range may be dispensed with entirely upon a court determination of present and future inability to pay any fine. The inability of a defendant to post bail bond (having otherwise been determined eligible for release) and the fact that a defendant is represented by (or was determined eligible for) assigned counsel are significant indicators of present inability to pay any fine. In conjunction with other factors, they may also indicate that the defendant is not likely to become able to pay any fine." Application Note No. 3.

information regarding a request for restitution from the two victims Jane Doe #1 and Jane Doe #2.

Guideline Provisions:

Restitution shall be ordered pursuant to USSG § 5E1.1.

According to the information in the Presentence Investigation Report, Mr. Blaylock owns no real property and owns no vehicle.  He has an Index Annuity Account with $16,000 and owes back taxes in an amount less than $3,000.  It appears that the account is the only means of paying restitution, and with the substantial period of incarceration there is no way to make additional installment payments for restitution.  Should the victims request a restitution hearing, the only means which Mr. Blaylock would have to pay installment restitution would be if he receives a sentence of incarceration that would allow him to be released in time for his to become gainfully employed for a sufficient period before retirement age during which he could make restitution installment payments.

## CONCLUSION

Mr. Blaylock  respectfully requests a downward variance which would allow for a period of incarceration that would  achieve the purposes of the sentencing guidelines.

Respectfully submitted,

s/ Mark Henricksen
MARK HENRICKSEN
HENRICKSEN & HENRICKSEN
LAWYERS, INC.

2915 N. Classen Blvd. Suite 215
Oklahoma City, OK 73106
(405) 609-1970
mark@henricksenlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of April, 2024, I electronically submitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following Registrant:

brandon.hale@usdoj.gov

s/ Mark Henricksen
MARK HENRICKSEN.